IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| KEVIN NICHOLS, § | | |
| *Plaintiff*, § | | |
| v. § | | CASE NO. 7:19-CV-00001 |
| UNITED STATES OF AMERICA, and GEO § | | |
| GROUP, INC., § | | *Civil Jury Demanded* |
| *Defendants*. § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, KEVIN NICHOLS, Plaintiff, who files his *Original Complaint* seeking monetary damages from the UNITED STATES OF AMERICA and GEO GROUP, INC, Defendants, and respectfully shows the Court:

## I. INTRODUCTION

1. At all times material to this action, Plaintiff was a Federal inmate, under the care, custody, and control of Defendant THE UNITED STATES OF AMERICA, by and through its federal correction officers, staff, contractors, agents, servants, and employees associated with the Federal Bureau of Prisons ("**BOP**"), for medical complaints including, but not limited to, a broken ankle.

2. From approximately January 2 or 3, 2017 through January 17, 2017, Plaintiff was a Federal inmate, under the care, custody, and control of Defendant GEO GROUP, INC. ("**GEO**"), by and through its correction officers, staff, contractors, agents, servants, and employees. GEO was contracted by the U.S. Marshals Service to house and care for federal prisoners at the Ector County Correction Center in Odessa, Ector County, Texas ("**ECCC**"). Plaintiff was detained at ECCC, held in the care and custody of GEO, awaiting transfer to FCI Big Spring ("**FCI-BS**") for violating federal parole.

3. While in custody and awaiting transfer, on January 3, 2017, Plaintiff suffered an injury. He was taken to Medical Center Hospital ("**MCH**") in Odessa. The physicians at MCH determined Plaintiff suffered a broken right ankle that required surgical intervention. However, instead of receiving surgery, Plaintiff was returned to ECCC for transfer to FCI-BS. Defendant

GEO had knowledge and awareness of Plaintiff's injury and condition. Plaintiff waited for his transfer in a wheelchair, unable to walk, and in severe pain.

4. Plaintiff was transferred to FCI-BS on or about January 17, 2017. He was in a wheelchair, his ankle in a splint/stirrup ankle brace, with prescription oral pain medication and surgical orders. The Federal Bureau of Prisons and FCI-BS medically evaluated Plaintiff. Defendant FCI-BS had knowledge and awareness of Plaintiff's injury and condition.

5. Plaintiff sought medical care while a BOP inmate at FCI-BS. He went for dressing changes. He went for his prescription pain medication. He developed a MRSA skin infection, further complicating his injury. At all times, BOP and FCI-BS warden, guards, staff, agents, employees, and contractors had knowledge and awareness of Plaintiff's injury, condition, and suffering.

6. Repeatedly, FCI-BS medical records show Plaintiff was "awaiting transfer/surgery." FCI-BS's medical staff documented the medical necessity for Plaintiff's surgery. FCI-BS's outside medical providers examined, x-rayed, documented, and reported on the need for Plaintiff to have surgery.

7. When Plaintiff was released from FCI-BS custody in May 2017, he still had not had proper medical care. Plaintiff was released still in an ankle boot/splint and using a wheelchair, because he could not walk.

8. The deficient medical practices constituted significant, ongoing, and obvious risks to prisoners with chronic illnesses like Plaintiff. On information and belief, USA/BOP Monitoring Officials (1) knew of these systemic problems and the obvious risks they posed; (2) willfully ignored these issues; or (3) would have known of these issues through an even minimally reasonable performance of their duties. On information and belief, although serious, repeated, and systemic failures in clinical care at FCI-BS, ECCC, and GEO were readily apparent and would have been revealed by even the most cursory of audits, the USA/BOP Monitoring Officials still failed to remove chronically ill prisoners, like Plaintiff, from that hazard, take corrective action vis-à-vis GEO and ECCC, or increase the scope and rigor of monitoring activities both of medical care and the practices about FCI-BS and ECCC.

9. Plaintiff was placed in FCI-BS, a Medical Care Level 2 facility. Medical Care Level 2 was not appropriate as such "inmates are stable outpatients requiring quarterly clinical evaluations. Medical consultation or evaluation may be required from time-to-time, but are not

regularly needed. Conditions include medication-controlled diabetes, epilepsy, or emphysema." Plaintiff required daily dressing changes, needed assistance with activities of daily living, had acquired an infectious disease to be eradicated, and required urgent surgical care. Plaintiff was not given daily care at either ECCC or at FCI-BS.

10. Because of FCI-BS's medical inattention and negligence, Plaintiff suffered severe malunion of the right ankle with severe degeneration of the joint. Plaintiff will be forever disfigured and impaired because of GEO and FCI-BS's acts and omissions. Plaintiff suffered while under the complete care, custody, and control of Defendant GEO GROUP, INC., by and through its correction officers, staff, contractors, agents, servants, and employees, and Defendant, THE UNITED STATES OF AMERICA, by and through federal correction officers, staff, employees, and contractors, including, but not limited to Warden Jorge Castaneda, Associate Warden Scott Keilman, and Assistant Health Service Administrator Mary Pence, who knew or should have known that their actions would cause serious, permanent bodily injury to Plaintiff.

## II.   JURISDICTION & VENUE

11. This Court has subject-matter jurisdiction over these federal claims under 28 U.S.C. § 1331 because they arise under the laws of the United States. This Court has diversity jurisdiction over this lawsuit under 28 U.S.C. § 1332.

12. Venue is proper in this judicial district under 28 U.S.C. § 1402(b) because this is civil lawsuit on a tort claim and Plaintiff resides in this district.

13. On or about June 8, 2018, an Administrative Tort Claim was submitted to the United States Department of Justice, Federal Bureau of Prisons, South Central Region. The claim was received by BOP on Jun 27, 2018. The Government failed to respond. Plaintiff exhausted his administrative remedies.

## III.   PARTIES

14. **Plaintiff KEVIN NICHOLS** is an individual who resides in Odessa, Ector County, Texas.

15. All USA Defendants acted under color of federal law with respect to all matters alleged. All other Defendants acted under color of state law with respect to all matters alleged.

*A.  Defendant United States of America*

16. **Defendant UNITED STATES OF AMERICA** is the government of the United States and is the appropriate defendant under the Federal Tort Claims Act. 28 U.S.C. § 2671, *et seq.* At

all times material, Defendant UNITED STATES OF AMERICA, by and through the United States Department of Justice and its agency, FEDERAL BUREAU OF PRISONS, were the owners or operators or controllers of a prison operation known as the Federal Correction Institute located at 1900 Simler Drive, Big Spring, Texas 79720, referred to as FCI Big Spring or FCI-BS.

### B. *Defendant GEO Group*

17. **Defendant GEO GROUP, INC**. is corporation incorporated under the laws of Florida and has its principal place of business in Boca Raton, Florida. Defendant GEO GROUP, INC. is a private prison operator and owner. At all times relevant to this Complaint, owned, operated, or controlled Ector County Correctional Center at 301 N. Texas Avenue, Odessa, Texas.

### IV.   CONDITIONS PRECEDENT SATISFIED

18.   All conditions precedent were performed or have occurred.

### V.   FACTS

19.   Prior to his transfer to FCI-BS, BOP knew of Plaintiff's broken ankle and his need for surgery. (BOP 2018-04782 212/258). On arrival at FCI-BS it was documented Plaintiff had a broken ankle in a temporary cast.

20.   On January 18, 2017, FCI-BS Health Services records document Dr. Russell, MLP Alvarez, and Nurse Willborn's knowledge of Plaintiff's wheelchair usage, broken ankle, and "severe pain." (BOP 2018-04782 111/258). MLP Alvarez prioritized Plaintiff's care as an emergency. (BOP 2018-04782 117/258). The same day Assistant Health Service Administrator Pence reviewed Plaintiff's medical records. (BOP 2018-04782 114/258). Pence noted Plaintiff was scheduled for an orthopedic consultation the following day by Ector County Jail, and sent Plaintiff's x-rays to a local orthopedic physician "to have his appointment scheduled locally asap."

21.   On January 23, 2017, FCI-BS Health Services records document Dr. Russell, MLP Alvarez, and Nurse Sosa's knowledge of Plaintiff's broken ankle, pain, and need for surgery. (BOP 2018-04782 108/258). Defendant renewed Plaintiff's prescription opioid pain medicine for another 5 days.

22.   On January 24, 2017, FCI-BS Health Services records document Dr. Russell, MLP Alvarez, and Nurse Sosa's knowledge of Plaintiff's broken ankle, pain, and "Urgent" need for surgery. (BOP 2018-04782 105/258). Defendant's notes indicate Plaintiff had an appointment with an orthopedic surgeon who diagnosed a closed bimalleolar fracture of the right ankle. Nurse

Sosa reported: "Inmate needs ORIF [Open Reduction Internal Fixation surgery] As soon as possible."

23.   On January 28, 2017, FCI-BS Health Services records document Dr. Russell and MLP Alvarez's knowledge of Plaintiff's broken ankle, pain, and need for surgery.  (BOP 2018-04782 102/258).  Defendant renewed Plaintiff's prescription opioid pain medicine for another 10 days.

24.   On January 30, 2017, FCI-BS Health Services records document Dr. Russell and MLP Alvarez's knowledge of Plaintiff's broken ankle, pain, and need for surgery.  (BOP 2018-04782 98–100/258).  MLP Alvarez performed a "Chronic Care Follow up" based on Plaintiff having been at FCI-BS for 14 days.

25.   On February 1, 2017, FCI-BS Health Services records document Dr. Russell and Nurse Murphree's knowledge of Plaintiff's broken ankle.  (BOP 2018-04782 96/258).  Defendant examined Plaintiff's feet.

26.   On February 7, 2017, FCI-BS Health Services records document Dr. Russell and MLP Alvarez's knowledge of Plaintiff's broken ankle.  (BOP 2018-04782 94/258).  Defendant renewed Plaintiff's prescription opioid pain medicine for another 10 days.

27.   On February 8, 2017, FCI-BS Health Services records document Dr. Russell, MLP Alvarez, and Nurse Wilborn's knowledge of Plaintiff's broken ankle and need for surgery.  (BOP 2018-04782 91/258).   Health Services staff reviewed information from Plaintiff's "outside Ortho[pedic] consult[ation]."   The orthopedic surgeon ordered FCI-BS to deliver Plaintiff for a follow-up with his office in one week and surgery in two weeks.  (BOP 2018-04782 206/258).

28.   On February 9, 2017, FCI-BS Health Services records document Dr. Russell, MLP Alvarez, and Nurse Wilborn's knowledge of Plaintiff's broken ankle.  (BOP 2018-04782 86, 88/258).  Plaintiff reported to Health Serviced for "daily dressing change" by Nurse Wilborn.

29.   On February 10, 12, 13, and 16, 2017, FCI-BS Health Services records document MLP Alvarez, Nurse Sosa, and Nurse Murphree's knowledge of Plaintiff's broken ankle.  (BOP 2018-04782 73, 76, 79, 84/258).  Plaintiff reported to Health Serviced for "daily dressing change" by Nurse Murphree and Nurse Sosa.  The February 13th note indicates Plaintiff "reports tomorrow for wound care;" however, Plaintiff's wound was not cared for again for another 3 days.

30.   BOP took x-rays of Plaintiff's ankle on February 14, 2017.  (BOP 2018-04782 209/258).  Dr. Russell knew of the acute and oblique fractures to Plaintiff's right ankle.

31. On February 17, 2017, FCI-BS Health Services records document Dr. Russell, MLP Alvarez, and Nurse Sosa's knowledge of Plaintiff's broken ankle and that he was scheduled for surgery. (BOP 2018-04782 70/258). Defendant renewed Plaintiff's prescription opioid pain medicine for another 10 days.

32. On February 18 and 19, 2017, FCI-BS Health Services records document MLP Alvarez and Nurse Sosa's knowledge of Plaintiff's broken ankle. (BOP 2018-04782 64, 67/258). Plaintiff reported to Health Serviced for "daily dressing change" by Nurse Sosa.

33. On February 22, 2017, FCI-BS Health Services records document Nurse Murphree and Dr. Russell cancelled Plaintiff's ankle surgery due to an infection he obtained as a BOP inmate. (BOP 2018-04782 60/258). Plaintiff was diagnoses as having a "Displaced closed bimalleolar fracture right ankle." Nurse Murphree noted she "MUST have [patient] in my clinic next week. . . . Anticipate referral to Dr. Grimes or Sthephenson [sic] in Lubbock then." No such was referral was ever made. The surgery was never rescheduled.

34. On February 23, 2017, FCI-BS Health Services records document MLP Alvarez and Nurse Sosa's knowledge of Plaintiff's broken ankle. (BOP 2018-04782 57/258). Plaintiff reported to Health Serviced for "daily dressing change" by Nurse Sosa.

35. On February 24, 2017, FCI-BS Health Services records document Dr. Russell and MLP Alvarez knowledge of Plaintiff's broken ankle. (BOP 2018-04782 55/258). Dr. Russell approved the 10-day renewal of Plaintiff's prescription opioid pain medication, Acetaminophen with Codeine 300/30 MG.

36. On February 26, 27, 28, 2017, FCI-BS Health Services records document Dr. Russell, MLP Alvarez, Nurse Murphree, and Nurse Sosa's knowledge of Plaintiff's broken ankle. (BOP 2018-04782 47, 50, 53/258). Plaintiff reported to Health Serviced for "daily dressing change" by Nurse Sosa and Nurse Murphree.

37. On March 2, 2017, FCI-BS Health Services records document Dr. Russell, MLP Alvarez, and Nurse Sosa's knowledge of Plaintiff's broken ankle. (BOP 2018-04782 42–45/258). Plaintiff reported to Health Serviced for "daily dressing change" by Nurse Sosa. He was still wearing the "medical boot" and using a wheelchair. This is the last record of a dressing change or wound care provided to Plaintiff. Dr. Russell and MLP Alvarez noted Plaintiff was "awaiting for [sic] surgery" when they renewed his prescription pain medicine for another 30 days.

38. On March 29, 2017, FCI-BS Health Services records document Dr. Russell and MLP Alvarez's knowledge of Plaintiff's broken ankle and that he was "awaiting for [sic] surgery." (BOP 2018-04782 39/258). Defendant renewed Plaintiff's prescription pain medicine for another 30 days.

39. On April 6, 2017, FCI-BS Health Services records document Dr. Russell and MLP Alvarez's knowledge of Plaintiff's broken ankle and that he was "awaiting for [sic] surgery." (BOP 2018-04782 38/258). Health Services referred Plaintiff to "update x[-]rays." Two x-rays views of Plaintiff's right ankle were ordered. After comparing the April 7th x-ray to the prior x-ray the radiologist determined: "No significant interval healing is seen." (BOP 2018-04782 190/258).

40. On April 25, 2017, FCI-BS Health Services records document Dr. Russell and MLP Alvarez's knowledge of Plaintiff's broken ankle and that he was "awaiting for [sic] surgery." (BOP 2018-04782 34/258). Defendant renewed Plaintiff's prescription pain medicine for another 30 days.

41. On May 6, 2017, FCI-BS Health Services records document Dr. Russell and Nurse Sosa's knowledge of Plaintiff's broken ankle and MRSA diagnosis. (BOP 2018-04782 23/258).

42. On May 9, 2017, while an inpatient at Scenic Mountain Medical Center, Plaintiff was to have a consultation with Dr. Ewing, an orthopedic physician "to evaluate his broken leg while hospitalized." (BOP 2018-04782 12/258). X-rays were taken which showed acute fractures of the right ankle. (BOP 2018-04782 245/258). The hospital notes surgery is necessary on Plaintiff's right ankle. (BOP 2018-04782 249/258). This was known to Pence and Dr. Russell.

43. In anticipation of Plaintiff's impending release, knowing he needed surgery and continuing medical care, FCI-BS Health Services records document Assistant Health Service Administrator Pence provided Plaintiff with information regarding "indigent medical care in the Odessa area" that she obtained "from the Regional Social worker in regards to local resources for inmate Nichols for care after release." (BOP 2018-04782 217/258).

44. On May 23, 2017, FCI-BS Health Services records document Dr. Russell and MLP Alvarez's knowledge of Plaintiff's broken ankle and continuing pain. (BOP 2018-04782 213/258). Defendant renewed Plaintiff's prescription opioid pain medicine for another 30 days.

45. Plaintiff was released on or about May 30, 2017. FCI-BS Health Services records document Nurse Willborn, on Plaintiff's "Inmate Full Term Release" form, noted Plaintiff was

released with a "Current" right ankle fracture and "surgical repair" was still needed.  (BOP 2018-04782 219/258).

46. USA's designation of Plaintiff to a facility that was inadequate to meet his medical needs constituted both deliberate indifference and gross negligence, and it was a direct and proximate cause of Plaintiff's extreme physical, mental, and emotional pain.

## VI.   CAUSES OF ACTION

### C. *Negligence and gross negligence claims against GEO Group*

47. At all times material to this action, Defendant GEO GROUP, INC., by and through its correction officers, staff, contractors, agents, servants, and employees, negligently or carelessly maintained, cared for, and controlled Plaintiff.  Defendant GEO, by and through its correction officers, staff, contractors, agents, servants, or employees, had a duty to take reasonable care of Plaintiff and to make safe or to warn Plaintiff of the presence of any conditions or actions of Defendant, that Defendant knew or in exercising reasonable care, should have known existed and that Defendant realize or should have realized involved an unreasonable risk of harm to Plaintiff and Defendant knew or in exercising reasonable care should have known was unknown to and unlikely to be discovered by Plaintiff.  Plaintiff would show Defendant breached the duty it owed to Plaintiff and was therefore guilty of negligence by one or more of these acts or omissions:

   a) Negligent, careless, and improper failure in hiring and retention of GEO officers, employees, staff, and medical personnel responsible for the care, custody, and control of Plaintiff at the time of Plaintiff's incarceration and to rectify the situation;

   b) Negligent, careless, and improper failure in the hiring or retention of the agents, servants, or employees charged with the responsibility of the care, custody, and control of Plaintiff and to rectify the circumstances;

   c) Negligent, careless, and improper failure to maintain a safe, clean physical facility to detain Plaintiff;

   d) Negligent, careless, and improper failure to maintain a clean facility, free of infectious diseases;

   e) Negligent, careless, and improper failure to train staff on procedures and protocol regarding infectious diseases and injured inmates, like Plaintiff;

   f) Negligent, careless, and improper failure to establish, maintain, and follow procedures and protocol to identify, control, and prevent infectious diseases within the inmate or inmate/guard population;

   g) Negligent, careless, and improper failure in handling or securing Plaintiff and taking reasonable care to make safe or warn Plaintiff of any condition which

        Defendant knew or should have known would cause serious bodily harm and to rectify the circumstances;

h) That Defendant knew or should have known that its actions of not providing necessary medical care and surgery as its own physicians recommended to Plaintiff would create an unreasonable risk of harm to Plaintiff and to have rectified the situation;

i) That Defendant knew or should have known Plaintiff was physically unwell or injured and to take reasonable actions thereto;

j) Negligent, careless, and improper failure to properly inspect or follow procedures on the care, custody, and control of Plaintiff;

k) Negligent, careless, and improper failure to follow proper policies and procedures about the care, custody, and control of Plaintiff;

l) Negligent, careless, and improper failure to have policies and procedures in handling the care, custody, and control of persons such as Plaintiff and to rectify the situation;

m) Negligent, careless, and improper failure to care for and treat Plaintiff's medical condition;

n) Negligent, careless, and improper failure in notifying or rectifying Plaintiff's medical condition;

o) Negligent, careless, and improper failure to provide proper medication or care or treatment to Plaintiff about his condition;

p) Negligent, careless, and improper failure to use reasonable care in securing and moving Plaintiff when Defendant knew or should have known its actions or inactions would bring about serious injury;

q) Negligent, careless, and improper failure to render medical aid and treatment when Defendant knew or, in exercising reasonable care, should have known Plaintiff suffered serious injuries while in custody and these injuries prevented Plaintiff from walking and caused continual pain, and failure to rectify the situation;

r) Negligent, careless, and improper failure to immediately contact medical personnel to provide medical assistance when Defendant knew or should have known its actions or inactions had caused serious permanent injuries and Plaintiff needed immediate medical attention, and to rectify the situation; and

s) Although Defendant knew or, in exercising reasonable care, should have known Plaintiff was unaware and unlikely to discover such negligent care, custody, and control of Plaintiff, they failed to warn Plaintiff in any way of such conditions and such dangers.

48. On information and belief, federal inmates in GEO custody, like Plaintiff, are more likely to be denied or delayed medical treatment than other federal prisoners because most are serving relatively short sentences for non-violent or immigration crimes, creating a financial

incentive for private contractors to delay, minimize, and shunt to their medical care to outside providers.

49. Defendant GEO's conduct placed Plaintiff at extreme risk of serious injury and exhibited a conscious indifference to his safety or well-being. Defendants' actions in this regard were extreme, outrageous, malicious, and grossly negligent.

50. Each of the above and foregoing acts, both of commission and omission, singularly or combined with others, constitute negligence, which proximately caused the incident made the basis of this suit, the injuries sustained by Plaintiff, and damages pleaded.

### D. *Negligence and gross negligence claims against The United States of America*

51. At all times material to this action, Defendant, THE UNITED STATES OF AMERICA ("**USA**"), by and through its federal correction officers, staff, contractors, agents, servants, or employees associated with the Federal Bureau of Prisons, negligently or carelessly maintained, cared for, and controlled Plaintiff. Defendant USA by and through its federal correction officers, staff, contractors, agents, servants, or employees associated with the Federal Bureau of Prisons, had a duty to take reasonable care of Plaintiff and to make safe or to warn Plaintiff of the presence of any conditions or actions of Defendant, that Defendant knew or in exercising reasonable care, should have known existed and that Defendant realize or should have realized involved an unreasonable risk of harm to Plaintiff and Defendant knew or in exercising reasonable care should have known was unknown to and unlikely to be discovered by Plaintiff. Plaintiff would show Defendant breached the duty it owed to Plaintiff and was therefore guilty of negligence by one or more of these acts or omissions:

 a) Negligent, careless, and improper failure in the hiring or retention of the agents, servants, or employees charged with the responsibility of the care, custody, and control of Plaintiff and to rectify the circumstances;

 b) Negligent, careless, and improper failure in hiring and retention of federal correction officers, employees, staff, and medical personnel responsible for the care, custody, and control of Plaintiff at the time of Plaintiff's incarceration and to rectify the situation;

 c) Negligent, careless, and improper failure to maintain a clean facility, free of infectious diseases;

 d) Negligent, careless, and improper failure to train staff on procedures and protocol regarding infectious diseases and injured inmates, like Plaintiff;

e) Negligent, careless, and improper failure to establish, maintain, and follow procedures and protocol to identify, control, and prevent infectious diseases within the inmate or inmate/guard population;

f) Negligent, careless, and improper failure in handling or securing Plaintiff and taking reasonable care to make safe or warn Plaintiff of any condition which Defendant knew or should have known would cause serious bodily harm and to rectify the circumstances;

g) Negligent, careless, and improper failure to reasonably maintain care, custody, and control of Plaintiff;

h) That Defendant knew or should have known its actions created an unreasonable risk of harm to Plaintiff and to rectify the circumstances;

i) That Defendant knew or should have known that its actions of not providing necessary medical care and surgery as its own physicians recommended to Plaintiff would create an unreasonable risk of harm to Plaintiff and to have rectified the situation;

j) That Defendant knew or should have known Plaintiff was physically unwell or injured and to take reasonable actions thereto;

k) Negligent, careless, and improper failure to properly inspect or follow procedures on the care, custody, and control of Plaintiff;

l) Negligent, careless, and improper failure to follow proper policies and procedures about the care, custody, and control of Plaintiff;

m) Negligent, careless, and improper failure to have policies and procedures in handling the care, custody, and control of persons such as Plaintiff and to rectify the situation;

n) Negligent, careless, and improper failure to diagnose, care for, and treat Plaintiff's medical condition;

o) Negligent, careless, and improper failure in notifying or rectifying Plaintiff's medical condition;

p) Negligent, careless, and improper failure to provide proper medication or care or treatment to Plaintiff about his condition;

q) Negligent, careless, and improper failure to use reasonable care in securing and moving Plaintiff when Defendant knew or should have known its actions or inactions would bring about serious injury;

r) Negligent, careless, and improper failure to render medical aid and treatment when Defendant knew or, in exercising reasonable care, should have known Plaintiff suffered serious injuries while in custody and these injuries prevented Plaintiff from walking and caused continual pain, and failure to rectify the situation;

s) Negligent, careless, and improper failure to immediately contact medical personnel to provide medical assistance when Defendant knew or should have known its

  actions or inactions had caused serious permanent injuries and Plaintiff needed immediate medical attention, and to rectify the situation;

t) Negligent investigation, selection, screening, contracting, and retention of GEO, and its subcontractors, which is negligence under Texas law and violating 18 U.S.C. § 4042;

u) Negligent assignment or designation under Federal Tort Claims Act, Texas common law, and 18 U.S.C § 4042 by failing to place Plaintiff in a facility adequate to meet his medical needs, including, but not limited to, failing to follow BOP policy to make a BOP Medical Designation considering (1) his medical needs; (2) his security needs; (3) proximity to his home; (4) transportation requirements; and (5) recommendations made by the sentencing judge; and

v) Although Defendant knew or, in exercising reasonable care, should have known Plaintiff was unaware and unlikely to discover such negligent care, custody, and control of Plaintiff, they failed to warn Plaintiff in any way of such conditions and such danger.

52. Additionally, USA was deliberately indifferent and negligent in contracting, hiring, and retaining ECCC and GEO. USA, through its agents at BOP and U.S. Marshals, knowingly deprived Plaintiff of reasonable safety and adequate medical care when they subjected him, and all ECCC prisoners with chronic illnesses, to the obvious risk posed by GEO's incompetence and outright indifference to medical needs; GEO's inability to maintain ECCC safely, including preventing infectious diseases; and the repeating, ongoing physical plant failures of ECCC. Such conduct constituted both deliberate indifference and gross negligence. USA Contracting Officials' selection of GEO, specifically permitting housing of federal inmates at ECCC, was a cause of violating Plaintiff's constitutional rights that led to his injuries and damages.

53. Appropriate and even minimally adequate scrutiny of the performance history of GEO, required by federal acquisition regulations, would have led USA Contracting Officials to conclude that an obvious consequence of GEO's detention services at ECCC would be the deprivation of the constitutional rights of ill prisoners like Plaintiff, or would have led them to reach such a conclusion had they not willfully ignored the issue and approached it with gross negligence. Appropriate and even minimally adequate scrutiny of ECCC's history of systemic failures in physical maintenance would have revealed the significant and unreasonable risk the condition of the facility posed to prisoners with injuries, like Plaintiff.

54. On information and belief, USA's agents, officials, employees, or staff (1) knew of ECCC's deficiencies as a facility in which to safely house federal inmate (as any meaningful past

performance evaluation of ECCC would have revealed such deficiencies); (2) willfully ignored such deficiencies; or (3) approached the issue with gross negligence, and did not take these deficiencies into appropriate and adequate account. This failure to act to avert obvious risk constitutes both deliberate indifference and negligence, and is causally linked to Plaintiff's injuries and damages.

55. Under the Federal Tort Claims Act, Defendant USA is liable for these actions, including, but not limited to, those taken by Warden Jorge Castaneda, Associate Warden Scott Keilman, and Assistant Health Service Administrator Mary Pence, Javier Alvarez, MLP, Kenneth Russell, M.D., Anselmo Padilla-Luna, RN, Halina Sosa, RN, Alison Murphree, RN, Angela Wilborn, RN, Teleisa Crnkovich, RN, who were federal employees acting within the scope of their office or employment during the period of Plaintiff's incarceration.

56. Defendant USA's conduct placed Plaintiff at extreme risk of serious injury and exhibited a conscious indifference to his safety or well-being. Defendants' actions in this regard were extreme, outrageous, malicious, and grossly negligent.

57. Each of the above and foregoing acts, both of commission and omission, singularly or combined with others, constitute negligence, which proximately caused the incident made the basis of this suit, the injuries sustained by Plaintiff and damages pleaded.

## VII.   DAMAGES

58. Plaintiff would show that as a proximate cause of the acts or omissions committed by Defendants, Plaintiff may recover at least these legal damages:

  a) Medical, hospital and pharmaceutical expenses incurred in the past;
  b) Medical, hospital and pharmaceutical expenses, which in all reasonable probability will be incurred in the future;
  c) Physical pain and suffering in the past;
  d) Physical pain and suffering, which in all reasonable probability will be suffered in the future;
  e) Mental anguish suffered in the past;
  f) Mental anguish, which in all reasonable probability will be suffered in the future;
  g) Physical impairment in the past;
  h) Physical impairment, which in all reasonable probability will be suffered in the future;
  i) Disfigurement in the past;
  j) Disfigurement which, in all reasonable probability will be suffered in the future;

k) Loss of earning capacity sustained in the past; and

l) Loss of earning capacity which in reasonable probability Plaintiff will sustain in the future.

59. Based on the above-enumerated damages, Plaintiff pleads for actual damages in an amount the jury deems reasonable under the circumstances, which exceed the minimum jurisdictional limits of the Court

60. Furthermore, Plaintiff assert the acts or omissions of Defendant USA and Defendant GEO as alleged were malicious, intentional, fraudulent, or grossly negligent. Therefore, Plaintiffs sue for punitive damages, as allowed by Texas law, *Texas Civil Practice and Remedies Code*, and Federal law, *Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008); *Stokes v. Delcambre*, 710 F.2d 1120 (5th Cir. 1983), in an amount over the minimal jurisdictional limits

## VIII.   PRE-EXISTING INJURY

61. If it be shown Plaintiff suffered from any pre-existing injury, disease, or condition at the time of the incident made the basis of the lawsuit, then such injury, disease, or condition was aggravated or exacerbated by the negligence of Defendants.

## IX.   SUBSEQUENT INJURY

62. If it be shown Plaintiff suffered from any later injury, disease, or condition, then such injury, disease, or condition aggravated or exacerbated the injuries, diseases, or conditions proximately caused by the negligence of Defendants.

## X.   ATTORNEYS' FEES

63. Because of Defendants' conduct, as described in this petition, and the resulting damage and loss suffered by Plaintiff, Plaintiff was forced to seek assistance of an attorney. Therefore, Plaintiff seeks all reasonable and necessary attorneys' fees and court costs under 42 U.S.C. § 1988, 28 U.S.C. § 2412, and other applicable law.

## XI.   INTEREST

64. Plaintiff specifically pleads for prejudgment interest at the maximum rate allowed by law on damages that have accrued at the time of judgment and amounts. Plaintiff specifically pleads for postjudgment interest at the maximum rate allowed by law on judgment amounts rendered until paid.

## XII.   MISNOMER/ALTER EGO

65. If any parties are misnamed or are not included herein, Plaintiff contends such was a "misidentification," "misnomer," or such parties are/were "alter egos" of parties named.

Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### XIII.   JURY DEMAND

66.   Plaintiff demands a trial by jury.

### XIV.   RULE 609 REQUEST

67.   Under *Federal Rule of Evidence* 609, Plaintiff requests from Defendants advanced, written notice of the intent to use impeachment evidence of conviction of a crime(s) of Plaintiff and of any witness(es).

### XV.   U.S. LIFE TABLES

68.   Notice is given to Defendants that Plaintiff intends to use the U.S. Life Tables as published by the Department of Health and Human Services in the trial of this matter.  In the alternative, Plaintiff intends to use the Social Security Actuarial Life Tables published by Social Security Administration (*available at* https://www.ssa.gov/oact/STATS/table4c6.html (last visited June 19, 2018)).

### XVI.   PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff prays Defendants be cited to appear and answer and upon a final hearing, a Judgment be rendered for Plaintiff against Defendants for the damages in an amount that exceeds $1,000,000.00, but defers to the jury to award damages in an amount the jury deems reasonable under the circumstances, which exceed the minimum jurisdictional limits of the Court.  Further, Plaintiff pleads for all costs of court, prejudgment interest, postjudgment interest, attorneys' fees, and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

AMBLERLAW, PLLC
2651 Kermit Highway
Odessa, Texas 79763
P: 432.203.0303  |  F: 888.692.3391

By: *Rachel Ambler*
Rachel Ambler
State Bar No. 24081954
*Rachel@RachelAmbler.com*
**Attorneys for Plaintiff**